IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRENDA McMILLON[1] o/b/o W.M., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br>of Social Security, )<br>)<br>Defendant. ) | CIVIL ACTION NO. 2:08cv169-SRW<br>(WO) |

**MEMORANDUM OF OPINION**

Brenda McMillon o/b/o W.M.[2] brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her child's application for Supplemental Security Income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

**BACKGROUND**

On December 14, 2004 (protective filing date), plaintiff filed an application for Supplemental Security Income (SSI), alleging disability since November 1, 2004 on the basis

---

[1] Plaintiff's name is spelled "McMillion" in plaintiff's pleadings in this court, but "McMillon," in the proceedings before the Commissioner. The court uses the spelling indicated in the administrative transcript.

[2] W.M. will be referred to as the "plaintiff" in this memorandum of opinion.

of asthma and anxiety. (R. 58, 63). On January 18, 2007, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on February 15, 2007, in which he found that plaintiff was not under a disability as defined in the Social Security Act at any time through the date of the decision. On January 10, 2008, the Appeals Council denied plaintiff's request for review.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Factual findings that are supported by substantial evidence must be upheld by the court. See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence."). The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error

in the ALJ's application of the law, *or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted*, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46 (emphasis added).

## DISCUSSION

"Federal regulations set forth the process by which the SSA determines if a child is disabled and thereby eligible for disability benefits." Shinn ex rel. Shinn v. Commissioner of Social Sec., 391 F.3d 1276, 1278 (11th Cir. 2004) (citing 42 U.S.C. § 1382c(a)(3)(C)(I) and 20 C.F.R. § 416.906). "The process begins with the ALJ determining whether the child is 'doing substantial gainful activity,' in which case [he] is considered 'not disabled' and is ineligible for benefits." Id. (citing 20 C.F.R. §§ 416.924(a), (b)). In this case, the ALJ determined that plaintiff, a preschooler, has not engaged in substantial gainful activity. R. 25.

"The next step is for the ALJ to consider the child's 'physical or mental impairment(s)' to determine if [he] has 'an impairment or combination of impairments that is severe.'" Id. (citing 42 U.S.C. §§ 416.924(a), (c)). The ALJ found that plaintiff has the severe impairments of asthma, anxiety, and speech problems. R. 25.

"For an applicant with a severe impairment, the ALJ next assesses whether the impairment 'causes marked and severe functional limitations' for the child." Shinn, 391 F.3d at 1278 (citing 20 C.F.R. §§ 416.911(b), 416.924(d).) This determination is made according to objective criteria set forth in the Code of Federal Regulations (C.F.R.). As the Eleventh

Circuit has explained,

> [t]he C.F.R. contains a Listing of Impairments ["the Listings", found at 20 C.F.R. § 404 app.] specifying almost every sort of medical problem ("impairment") from which a person can suffer, sorted into general categories. See id. § 416.925(a). For each impairment, the Listings discuss various limitations on a person's abilities that impairment may impose. Limitations appearing in these listings are considered "marked and severe." Id. ("The Listing of Impairments describes ... impairments for a child that cause[ ] marked and severe functional limitations.").
>
> A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations "meet[ ], medically equal[ ], or functionally equal[ ] the [L]istings." Id. § 416.911(b)(1); see also §§ 416.902, 416.924(a). A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations "are at least of equal medical significance to those of a listed impairment." Id. § 416.926(a)(2).

Id. at 1278-79. In this case, the ALJ found that plaintiff did not have any impairment or combination of impairments that met or medically equaled a listed impairment. R. 25. The ALJ's discussion of this issue is limited to his negative finding followed by two sentences: "No treating or examining source has so concluded. In addition, I have examined the record, and I find that the evidence does not support such a conclusion." (Id.).

"Finally, even if the limitations resulting from a child's particular impairment are not comparable to those specified in the Listings, the ALJ can still conclude that those limitations are 'functionally equivalent' to those in the Listings. In making this determination, the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities. The C.F.R. specifies six major domains of life:

(i) Acquiring and using information;

(ii) Attending and completing tasks;

(iii) Interacting and relating with others;

(iv) Moving about and manipulating objects;

(v) Caring for [one]self; and

(vi) Health and physical well-being."

Shinn, 391 F.3d at 1279 (citing 20 C.F.R. § 416.926a(b)(1)). "The C.F.R. contains various 'benchmarks' that children should have achieved by certain ages in each of these life domains." Id. (citing 20 C.F.R. §§ 416.926a(g)-(l)). "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked' limitations in two of the domains [above], or an 'extreme' limitation in one domain." Id. (citing 20 C.F.R. § 416.926a(d) and § 416.925(a)).[3] The ALJ determined that W.M. has no limitation in any of the six domains. (R. 30-34). Thus, the ALJ concluded that the plaintiff is not disabled. (R. 34-35).

Plaintiff argues that the Commissioner's decision should be reversed because the ALJ: (1) erred by implicitly finding that W.M.'s Attention Deficit Hyperactivity Disorder, Combined Type resulted in a non-severe impairment; (2) committed legal error at step three

---

[3] " A 'marked' limitation is defined as a limitation that 'interferes seriously with [the] ability to independently initiate, sustain, or complete activities,' and is 'more than moderate.'" Henry v. Barnhart, 156 Fed.Appx. 171, 174 (11th Cir. 2005) (unpublished) (citing 20 C.F.R § 416.926a(e)(2)(I)). "An 'extreme' limitation is reserved for the 'worst limitations' and is defined as a limitation that 'interferes very seriously with [the] ability to independently initiate, sustain, or complete activities,' but 'does not necessarily mean a total lack or loss of ability to function.'" Id. (citing 20 C.F.R. § 416.926a(e)(3)(I)).

of the sequential evaluation process; (3) erred in rejecting the opinion expressed by Dr. Dillon after the consultative psychological examination that W.M. was "*severely* impaired in her ability to function in an age-appropriate manner socially, behaviorally, and in concentration, persistence, and pace" (see R. 137)(emphasis in original); (4) failed to issue a credibility finding in compliance with Eleventh Circuit law; and (5) failed to provide any rationale for rejecting the opinion of the state agency non-examining psychologist, Dr. Fleece, that W.M. has a "marked" limitation in the domain of attending and completing tasks (see R. 143).

The Commissioner agrees with plaintiff that the ALJ was required to make a specific credibility finding with regard to the testimony of W.M.'s mother, but argues that "[b]ecause the ALJ's decision in its entirety clearly implied that he did not find the subjective complaints entirely credible, this finding should not be disturbed." (Doc. # 16, p. 14). The Commissioner further "agrees that the ALJ here did not conduct full analyses at either the first or second tiers [of step three of the disability evaluation procedure]." (Id., at p. 7). The Commissioner argues, however, that because the ALJ's analysis at the third tier of step three – *i.e.,* the evaluation of whether W.M.'s impairments functionally equals a listed impairment – is supported by substantial evidence, his failure to analyze fully whether plaintiff's impairments meet or medically equal a listed impairment does not require reversal. Id. The Commissioner argues that the ALJ "properly found that [W.M.'s] ADHD was not one of her 'severe'

impairments"[4] because the ALJ's "detailed summary of the evidence of treatment with Dr. McCleod" show that the ALJ "relied on Dr. McCleod's notes that [W.M.'s behaviors improved with the support of medication and the beahvioral modifications implemented by her mother." (Doc. # 16, pp. 5-6). The Commissioner further maintains that plaintiff was not prejudiced because the ALJ is required to consider the combined effect of all impairments, even non-severe impairments, and the ALJ continued the sequential evaluation beyond step two. (Id., p. 6). Finally, the Commissioner argues that the ALJ "properly weighed the opinion of Dr. Dillon," finding that it was "not 'well-supported.'" (Id., p. 10)(citing ALJ opinion at R. 29). The Commissioner does not address plaintiff's argument that the ALJ was required – and failed – to explain the weight he gave to Dr. Fleece's opinion.

The ALJ's discussion on the step two issue of severity of plaintiff's impairments, in its entirety, is as follows:

**3. The claimant has the following severe impairments: asthma, anxiety, and speech problems (20 C.F.R. 416.924(c)).**

Dr. Patricia Block diagnosed the claimant with asthma in August 2003 (Exhibit 7F). Dr. Audrey S. Hall diagnosed the claimant with anxiety on November 10, 2004, in Psychiatric Evaluation (Exhibit 2F). Dr. Marnie S. Dillon related the claimant to have a speech articulation problem in evaluation on April 14, 2005 (Exhibit 3F).

(R. 25). Plaintiff's treating psychiatrist, Dr. McCleod, repeatedly lists ADHD, Combined

---

[4] This finding is implicit only. The ALJ did not explicitly make any conclusion about the severity of plaintiff's ADHD.

Type, as plaintiff's "primary" diagnosis throughout her treatment of the plaintiff from February through November 2006. (Exhibits 8F, 10F). In his summary of the evidence, the ALJ references Dr. McCleod's diagnosis once (see R. 28)[5], but does not mention it further at any point in his decision. He does not explicitly conclude that plaintiff's ADHD is not "severe" or give any reason for not including it among plaintiff's severe impairments. It may be – as the Commissioner argues – that the ALJ fully considered plaintiff's ADHD and found its effects to have been mitigated by medication. However, because there is absolutely no *analysis* of the evidence regarding this impairment, the ALJ's decision does not demonstrate that he considered the impairment, either at step two or beyond.[6]

At the administrative hearing, plaintiff's counsel concluded by arguing that plaintiff's condition "either meets or medically equals listing 1[]12.04 or 1[]12.11." (R. 223). As the Commissioner observes, the ALJ "did not conduct full analyses at either the first or second

---

[5] The ALJ wrote, "The claimant's mother described symptoms of fidgeting, talking excessively, often 'driven by a motor,' often interrupts others, difficulty waiting her turn and remaining seated, runs or climbs excessively, difficulty doing activities quietly, and answers questions before completely asked, which were interpreted as signs of attention deficit hyperactivity disorder, combined type, and she was prescribed Focalin and Tenex. The claimant's mother further described behavior of defying adults, easily annoyed by others, often annoying others, often losing her temper, irritability, restlessness, and sleep disturbance, which Dr. McCleod interpreted as mood disorder, not otherwise specified, and overanxious disorder. The mother further described the claimant's previous behavior of pulling out her hair and eating her hair, which was reportedly better, and also picking at her mouth which was interpreted by Dr. McCleod as trichotillomania, resolved pica, and resolved obsessional compulsive disorder, for which she was continued on Lexapro." (R. 28-29). Dr. McCleod actually listed both trichotillomania and pica as "resolved," and obsessive-compulsive disorder as a "Rule Out" diagnosis. (See, *e.g.*, R. 240).

[6] The court does not intend to suggest that every diagnosis in every disability claim requires discussion. As noted above, however, plaintiff's ADHD is her primary diagnosis from her treating psychiatrist.

8

tiers." (Doc. # 16, p. 7). The ALJ did not refer to the listings identified by counsel pertaining to mood disorders and ADHD, nor did he refer to the listing for anxiety disorders (112.06). He merely stated his conclusion that "plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments[,]" followed by this two-sentence analysis: "No treating or examining source or medical expert has so concluded.  In addition, I have examined the record, and I find that the evidence does not support such a conclusion."  (R. 25, Finding No. 4).  See Ellington v. Astrue, 2008 WL 1805435, 8 (M.D. Ala. 2008)(finding error where the ALJ "conflated the analysis which must be made in step three").

The ALJ found plaintiff's mother's statements regarding plaintiff's symptoms to be "not entirely credible." (R. 26).  However, instead of articulating reasons for discounting her credibility, the ALJ simply noted that his assessment of credibility must be based on the entire case record, and summarized the medical evidence, leaving the court to guess at his specific reasons for finding the plaintiff's mother's statements to be less than fully credible. If a credibility determination was required – as is apparently conceded by the Commissioner – ALJs in this circuit must articulate specific and adequate reasons for the determination. See Walker v. Bowen, 826 F.2d 996, 1004 (11th Cir. 1987)("Where the claimant's testimony is critical, the fact finder must articulate specific reasons for questioning a claimant's credibility.  Disregard of such complaints without articulating the reason is inappropriate because it deprives the reviewing court of the ability to determine the validity of that action.

When rejecting the credibility of a claimant's testimony, an ALJ must articulate the grounds for that decision.")(citations omitted)[7]; see also Holloway v. Astrue, 2009 WL 3063343 (M.D. Ala. Sep. 22, 2009)("Rote recitation of the medical evidence is not a substitute for articulating clear reasons for discrediting the plaintiff.").[8]

As noted previously, the ALJ found plaintiff to suffer from no limitations in any of the six functional domains. Dr. Fleece, a non-examining agency psychologist, assessed plaintiff to have a marked limitation in attending and completing tasks, a less than marked limitation in the domains of interacting and relating with others and caring for herself, and no limitation in acquiring and using information or health and physical well-being. (Exhibit 5F). The ALJ included Dr. Fleece's assessment in his summary of the evidence (R. 27) but did not further mention Dr. Fleece's opinion. However, the ALJ was required to explain the

---

[7] See also Social Security Ruling 96-7p, 61 Fed. Reg. 34483-01 (July 2, 1996):

When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

[8] The court notes that, on the record before this court, plaintiff's mother's testimony – even accepted as true – does not dictate an award of benefits.

weight he gave to this opinion. See SSR 96-6p ("Administrative law judges . . . may not ignore these opinions [of State agency medical and psychological consultants . . . regarding the nature and severity of an individual's impairment(s)] and must explain the weight given to these opinion in their decisions."). Dr. Dillon, the consultative examining psychologist, found plaintiff to be "*moderately* impaired in her ability [to] function in an age-appropriate manner cognitively, communicatively, and adaptively," and "*severely* impaired in her ability to function in an age-appropriate manner socially behaviorally, and in concentration, persistence and pace." (R. 137)(emphasis in original). The ALJ found Dr. Dillon's evaluation to be entitled to "little weight." The ALJ's stated reasons for assigning little weight to Dr. Dillon's opinion include plaintiff's cooperative behavior with other physicians and examiners on three occasions in November 2004, April 2005 and February 2006. However, the first reason identified by the ALJ is that Dr. Dillon's assessment "is evidently based on the claimant's mother's subjective allegations." (R. 29). It is apparent from Dr. Dillon's report that she based her assessment in part on the mother's report, but also on her own observation of the plaintiff during the evaluation. Dr. Dillon wrote:

> During today's evaluation, Ms. McMillon reported that [W.M.] engages in sustained and prolonged tantrums which are characterized by screaming "all day, all the time. She's never happy about anything." When denied her way, [W.M.] screams, jumps up and down, bites herself, bites her brothers, and hits her mother. During today's evaluation, [W.M.] told her mother that she wanted ice cream. When her mother refused, [W.M.] began crying, screaming, jumping, and struck her mother on several occasions. She maintained these behaviors throughout the remainder of the evaluation. She was unable to be soothed. It is noted that these behaviors were evident even when [W.M.] was on current medication regimen. [W.M.] exhibits prominent mood symptoms,

compulsive behaviors, sleep disturbance, and behavioral disturbances.

(R. 137).[9]  Accordingly, the first reason stated by the ALJ for rejecting Dr. Dillon's assessment is not, supported by the evidence.[10]  Additionally, in the absence of clearly articulated reasons for discounting Ms. McMillon's credibility, this stated reason for rejecting Dr. Dillon's opinion is inadequate.  A consultative psychological examiner's opinion, in the court's experience, is most often based on a claimant's subjective complaints and the expert examiner's observations of the claimant during the evaluation.  Further, while the other reason articulated by the ALJ – that plaintiff was cooperative in three office visits with other practitioners – is supported by the evidence, it is not clear to the court that this reason provides an adequate basis for entirely rejecting the opinion of the consultative psychologist regarding plaintiff's functional limitations.[11]

## CONCLUSION

---

[9] The ALJ did recognize – again, in his summary of the evidence – that claimant's reported tantrums were "illustrated in the evaluation," and that "Dr. Dillon noted the claimant's behavior to be irritable, noncompliant, and argumentative."  (R. 27).

[10] The Commissioner argues, in part, that the ALJ was not required to give Dr. Dillon's opinion more weight than that of plaintiff's treating physicians.  The court agrees.  However, except to the extent that Dr. McCleod assigned a GAF score – which the Commissioner has previously declined to credit as determinative of functional limitations – the court found no opinion from a treating physician regarding the severity of plaintiff's functional limitations.  See 65 FR 50746, 50764-65 (August 21, 2000)(Commissioner declined to include reference to GAF scores in introductory paragraphs of Listing 12.00D, noting that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings").

[11] The court notes that the record may support other adequate reasons not articulated by the ALJ; for instance, plaintiff's mother reported to Dr. McCleod in two office visits in November 2006 that plaintiff has no problems in school. (See R. 202, 204).

After careful review of the arguments of the parties, the evidence, and the decision of the ALJ, the court finds that the ALJ's written decision does not set forth his reasoning sufficiently to permit the court to conclude that the ALJ conducted a proper legal analysis. See Cornelius, 936 F.2d at 1145-46. The court emphasizes that each of the errors raised by the plaintiff would likely – standing alone – be found to be harmless. However, the cumulative effect of the deficiencies in the ALJ's opinion is such that the court is unable to conclude that the ALJ gave the evidence in plaintiff's case the consideration required by law. The ALJ's decision in this case amounts to little more than a recitation of the applicable law, a summary of the evidence, and his conclusory findings. There is little in the way of analysis, leaving the court to guess the basis for the ALJ's decision. The Commissioner's brief, boiled down to its essence, asks the court to excuse the defects in the decision because the evidence of record, accompanied by a more thorough analysis, would have supported denial of the plaintiff's claim for benefits. However, it is the ALJ who must conduct this analysis, and his written decision must include sufficient reasoning to permit the court to determine that he has done so. Because the court cannot conclude that the ALJ considered the case in accordance with applicable law, the decision of the Commissioner is due to be REVERSED, and this case REMANDED to the Commissioner for further proceedings. A separate judgment will be entered.

Done, this 9th day of October, 2009.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE